## In re MALONE.

(Supreme Court, Appellate Division, Third Department. March 6, 1912.)

EXECUTORS AND ADMINISTRATORS (§ 509*)—OPENING DECREE—SETTLEMENT OF ADMINISTRATOR'S ACCOUNT.

> Under Code Civ. Proc. § 2481, subd. 6, giving a Surrogate power to open a decree of his court, or to grant a new hearing for fraud or other sufficient cause, and giving the Supreme Court the same power on appeal from his determination on an application for such an opening, the decree settling the account of an administrator should be opened to allow a presentation of evidence, on application of the Attorney General, making allegations, supported by proper showing, that there was collusion, and that the court was imposed on, and that a party or parties relied on to protect the interest of the people, as trustee of unknown next of kin of deceased, had failed to do his or their duty, and that the application was made immediately on the facts being learned.

> [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2199–2219, 2233, 2234; Dec. Dig. § 509.*]

Appeal from Surrogate's Court, Albany County.

In the matter of the judicial settlement of the account of proceedings of Owen J. Malone, as administrator of Catherine Grimes, deceased. From a Surrogate's order denying an application to reopen a final decree of said Surrogate's Court, the People appeal. Reversed, final decree opened, and matter remitted for new trial.

See, also, 145 App. Div. 952, 130 N. Y. Supp. 1119; 145 App. Div. 952, 130 N. Y. Supp. 1120.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, and BETTS, JJ.

Thomas Carmody, Atty. Gen., for the People.
John J. McCall, for respondents Malone and Addington.
Neile F. Towner, for respondent Bristol.
Charles H. F. Reilly, for respondent Elwood.
Timothy E. Roland, in pro. per.
John F. Brady, in pro. per.

BETTS, J. Catherine Grimes died intestate at 95 Church street in a cheap old house in the city of Albany. The house belonged to her, and she occupied three poorly furnished rooms and apparently was a poor person. Her life, so far as appears in this record, had been a quiet, uneventful one. Her death created a stir. So far as is disclosed, she left no relatives in this state or country. Immediately upon her death, word was sent to Owen J. Malone, an undertaker who did business near, and he repaired to the house, took possession of the same, of its contents, and the remains of Mrs. Grimes. He filed an application for appointment as her administrator upon the ground that he was a creditor prior even to the funeral. A most extravagant and inappropriate burial was made of this old lady by said Owen J. Malone, who shortly after this funeral was appointed the administrator of her estate and qualified. The total contents of the house belonging to Mrs. Grimes were inventoried by two men

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

appointed by the Surrogate for that purpose, one of whom was apparently an employé of Malone, at $21.10. It was discovered that she was the owner of five deposits in Albany savings banks aggregating $15,973.78. Certain persons claiming to be relatives of the deceased unsuccessfully sought to establish in the Surrogate's Court their relationship. Various bills were presented against the estate, some of which were rejected, and proof concerning the same by consent was taken before the Surrogate, and he passed upon the same. Some of these bills were allowed at the full amount, some of them were reduced, and some of them not allowed at all. The then Attorney General had designated one Timothy E. Roland to represent the people of this state. Certain amounts were allowed to counsel in the case by the Surrogate. Certain other payments to counsel were included in the accounts of the administrator, which accounts were approved by the Surrogate in his final decree. Asserting that these bills were many of them unlawful, and not properly or sufficiently proven, that the amounts and allowances to Timothy E. Roland, the special counsel designated by the then Attorney General, and to John J. McCall, the attorney for the administrator, and to George Addington, his prior attorney, and to one John F. Brady, who was appointed special guardian for certain infant unknown heirs at law and next of kin, were excessive, illegal, and allowed without authority of law, the present Attorney General moved upon an affidavit of his deputy to vacate and set aside the decree allowing and passing upon such account and granting such allowances. This was of course opposed by all those whose claims or allowances were thus attacked. The Surrogate denied the motion, and from that denial the people of the state of New York through their Attorney General appeal to this court.

The bill of the undertaker, Owen J. Malone, the administrator, is perhaps a fair sample of the proceedings in this estate. It is $1,326.-56 by separate bill. In addition, he has credited himself in his first account with $20 paid to bearers at funeral, $10 for opening grave, and $25 paid St. John's Church for burial services, the items amounting to $55, making and swelling the total funeral expenses to $1,381.-56. The largest items are:

6/3 solid mahogany casket, lined with satin, honeycombed and silk
   pillow, oxidized extension handles with engraved plate........... $850 00
Burglar proof metallic grave vault................................  250 00

The grim irony of the bill is shown by the fact that the inventory sworn to by this administrator shows as the only items of clothing found in her residence and inventoried of this old lady the following:

One lot of clothing, old (junk).................................... 10 cents
Underwear pieces and two towels in bureau drawer...............  5 cents

Yet in his bill this administrator charges the following items:

Black silk dress................................................... $75
Underwear, stockings, skirts......................................  10
Slippers .........................................................   5

This old lady in life had fifteen cents worth of clothes. At her death this self-created administrator swears he placed upon her body

$90 worth of clothes. The bill of the undertaker administrator was allowed by the Surrogate at the full amount presented.

One Dr. William S. Bristol presented a claim against this old woman's estate for $1,966 and was allowed in full this amount for services attending this old lady for practically six years prior to her death. One physician was sworn who testified that he had attended this old lady at practically the same time. Dr. Bristol was not attending Mrs. Grimes at the time of her death and had not for some little time prior thereto.

One Mary Elwood, a tenant of this Catherine Grimes in the house in which Mrs. Grimes lived, presented a bill for $1,000 and was allowed $500, although she testified that she had paid her rent regularly. Dr. Bristol testified for Mrs. Elwood's claim, and Mrs. Elwood testified for Dr. Bristol's claim.

Timothy E. Roland was allowed $2,200 as and for his allowance as attorney for the people of the state of New York in this proceeding. The Attorney General says there is no legal warrant for such an allowance, and I have been unable to find any. It does not appear that Roland took any part whatever in opposing the allowance of these bills to either the undertaker, Dr. Bristol, or Mrs. Elwood.

John F. Brady was appointed by the Surrogate special guardian for certain infant unknown heirs at law and next of kin of said Catherine Grimes, deceased, the Surrogate's order appointing him reciting that such *unknown infants had no general guardian,* and was allowed by the Surrogate as such special guardian $250.

For quite a period of time George Addington represented the administrator, and the administrator placed in his first account filed the following item:

"May 22.  Paid George Addington, legal services, $750.00."

That is the only claim presented on behalf of George Addington.

In his supplemental account of proceedings, the administrator included this item:

"June 4, 1910, paid John J. McCall for legal services, counsel and advice in the preparation of account of proceedings herein for services rendered on the accounting herein, in the matter of disputed claims on the accounting herein, in the matter of proceedings to establish the kinship herein, in the matter of withdrawal of certain claims presented herein, in the matter of action in Supreme Court of Patrick Grimes v. Owen J. Malone, as administrator, and Albany City Savings Institution, in the matter of the action of Patrick Grimes against Owen J. Malone, as administrator, and the National Savings Bank, involving two bank accounts. in the matter of the action of Patrick Grimes against Owen J. Malone, and Albany Savings Bank, involving two bank accounts, and in professional services generally in connection with the account of proceedings of Owen J. Malone, as administrator of Catherine Grimes, deceased........................$5,700.00."

This item was objected to by the attorney for a claimed relative of the intestate, as were many other items; but, on the ground that this claimed relative was not in fact found to be a relative, the Surrogate declined to consider these objections. This $5,700 is objected to by the Attorney General as being exorbitant, illegal, improper, and that the Surrogate had no jurisdiction to allow the same, at least in the amount allowed.

The final decree of the Surrogate settling the account of the ad-- ministrator was made June 13, 1910, and the application of the At- torney General to open the decree was made on the 15th day of May, 1911. The Surrogate declined to open it upon the ground that the decree had not been appealed from and no sufficient cause was shown by the Attorney General for opening the decree, and the learned Sur- rogate farther held that he made no allowance whatever for legal serv- ices to the administrator's attorneys, but that the administrator's ac- count showed certain disbursements for counsel fees, and, as no one objected to the same, "the account, in respect to these items, was ad- judicated in the usual manner, and upon the consent of the Attorney. General."

The remainder of this personal estate is payable to the State Treas- urer under section 2747 of the Code of Civil Procedure which, so far as material, is as follows:

"Sec. 2747. Legacy, etc., to Unknown Person to Be Paid Into State Treas- ury. Where the person entitled to a * * * distributive share is un- known, the decree must direct the * * * administrator to pay the amount thereof into the treasury of the state, for the benefit of the person or per- sons who may thereafter appear to be entitled thereto."

The section farther provides for the payment of this amount to the rightful claimants thereto after "deducting all expenses incurred by the state with respect to the decedent's estate."

Now it is claimed by the Attorney General that the state is interest- ed here as a trustee for unknown next of kin, that the Attorney Gen- eral could not consent to any of these attacked allowances, that they were all grossly excessive so far as the allowances to attorneys were concerned, and that claims were allowed without proper proof, and that the representative of the Attorney General and the administra- tor had not properly protected the interest of the people of the state as such trustees. It is alleged in the moving affidavit that, if given the opportunity, it can be shown that certain of the claims allowed were unfounded, spurious, and illegal, and also that the allowances were excessive, exorbitant, and some of them without any authority what- ever in the statute.

See Matter of Hodgman, 82 Hun, 419-425, 31 N. Y. Supp. 263, 267, which says:

"A decree * * * that has only been permitted to remain in force as a decree, because no one who was injured by its errors made objection to it, now that such injured parties do appear and ask to be heard, and give reasons why they have not heretofore made their objections, the court will not, under the circumstances, be curious to find reasons or cases to per- mit it to remain longer in force and deprive the petitioners of the opportu- nity of asserting their claims."

Authority for the motion made is claimed under subdivisions 6 and 11 of section 2481 of the Code of Civil Procedure and also under the inherent authority of a court of record, even a court of limited juris- diction like the Surrogate's Court, to right a wrong which has been perpetrated under the forms of law. Section 2481, so far as material, is as follows:

"Sec. 2481. Incidental Powers of the Surrogate. A surrogate, in court or out of court, as the case requires, has power: * * * (6) To open,

vacate, modify, or set aside, or to enter, as of a former time, a decree or order of his court; or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error, or other sufficient cause. The powers conferred by this subdivision, must be exercised only in a like case and in the same manner, as a court of record and of general jurisdiction exercises the same powers. Upon an appeal from a determination of the Surrogate, made upon an application pursuant to this subdivision, the general term of the supreme court has the same power as the surrogate; and his determination must be reviewed, as if an original application was made to that term. * * * (11) With respect to any matter not expressly provided for in the foregoing subdivisions of this section, to proceed, in all matters subject to the cognizance of his court, according to the course and practice of a court, having, by the common law, jurisdiction of such matters, except as otherwise prescribed by statute; and to exercise such incidental powers, as are necessary to carry into effect the powers expressly conferred."

The Attorney General claims that there was collusion in the nature of fraud between certain of the parties here and that the Surrogate's Court was imposed on and deceived.

Matter of Hodgman, supra, also says:

"Matters then in the nature of a fraud, although not actually, perhaps, constituting a fraud in law, or which would be the basis of an action for fraud, yet matters of that character which have misled the petitioners, and by which they have been prejudiced, may be sufficient ground to authorize the Surrogate, or this court in reviewing the action of the Surrogate, to act under this section."

Matter of Hodgman is a case which bears some resemblance to the case at bar and the application to open, vacate, and set aside the decree was denied by the Surrogate and granted by the General Term in this department.

In Matter of Regan, 167 N. Y. 338–343, 60 N. E. 658, 659, it was held as follows:

"The Surrogate's Court has power independently of any statute to exercise control over its own records and to vacate its own decrees for mistake, fraud, or clerical error. It must be deemed to possess the incidental powers in that respect common to all courts or officers exercising judicial functions." And see cases there cited.

The representative of the people of this state says that the interests of the people as trustees for the unknown next of kin of Catherine Grimes were not properly protected in this proceeding.

It is an application addressed to the conscience of the court on an allegation that a party or parties relied upon to protect the interest of the people of the state had failed to do his or their duty, and that upon the first knowledge coming to the Attorney General of such dereliction of duty a motion was made with reasonable promptness to open this decree, to the end that errors might be corrected, justice be administered, and the property rights of the unknown next of kin of Catherine Grimes protected. Upon such an application the court should not be alert to inquire or seek to find reasons for denying such an application, but the decree should be opened. If it should finally be determined that the Attorney General was mistaken, full redress can be obtained in this estate by those who may be inconvenienced by such holding.

A careful examination of the evidence here submitted shows that many of the criticisms of the learned Attorney General are well founded, and that he should be given an opportunity to present the evidence he states he has to protect the interest of the people of this state.

I think that the evidence in this case presents such a state of affairs as should lead this court to open this decree so far as it affects the allowance of the following claims: Owen J. Malone for funeral expenses, $1,381.56; Mary Elwood, $500; William S. Bristol, $1,966. And the allowances to counsel: John J. McCall, $5,700; John F. Brady, $250; and Timothy E. Roland, $2,200—with the costs and disbursements of this appeal to the people of the state of New York payable out of the fund. All concur; HOUGHTON, J., in part, in opinion.

HOUGHTON, J. (concurring in part). I do not think sufficient was shown before the Surrogate to authorize a reopening of the decree with respect to the claims of William S. Bristol and Mary Elwood. The claims of the administrator and the various attorneys rest upon an entirely different footing from that of those two claimants, and I entirely agree with Mr. Justice BETTS that there should be a rehearing with respect to them.

Bristol and Elwood presented their claims to the administrator and he rejected them. Under the provisions of section 1822 of the Code of Civil Procedure, the claimants filed a stipulation with the Surrogate consenting that their claims be heard and determined by him upon the judicial accounting by the administrator. They could have brought actions. Before the Surrogate was given power to pass upon disputed claims, the practice was to take a reference, and any judgment obtained thereon had the force of a judgment of the Supreme Court. The allowance of a disputed claim by the Surrogate is in the nature of a judgment and should have the same force and effect as though allowed upon a reference and is equivalent to a judgment obtained pursuant to action. The fact that the claims so allowed were large, or even much too large, does not authorize a reopening of the decree with respect to them. Some fraud or undue advantage in obtaining the judgment and decree must appear else the decree must stand. No sufficient facts are shown which authorize the vacating of the findings and decree allowing these two claims. All parties were represented, witnesses were sworn and cross-examined, and the Surrogate made his findings of fact and conclusions of law in the most formal manner.

If the interested parties, including the state of New York, were dissatisfied, they should have appealed. These two claims as allowed should be permitted to stand. Otherwise the decree should be reversed, and a rehearing had as indicated in the opinion of Mr. Justice BETTS.